******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* DARNELL MOORE
(SC 19869)

Robinson, C. J., and Palmer, McDonald, D'Auria, Mullins and Kahn, Js.

Argued January 18—officially released December 24, 2019

*Procedural History*

Substitute information charging the defendant with the crime of murder, brought to the Superior Court in the judicial district of New London, where the court, *Jongbloed, J.*, denied the defendant's motions to strike the jury panel and to suppress certain evidence; thereafter, the case was tried to the jury; verdict and judgment of guilty, from which the defendant appealed to the Appellate Court, *Beach, Keller* and *Norcott, Js.*, which affirmed the judgment of the trial court, and the defendant, on the granting of certification, appealed to this court. *Appeal dismissed.*

*Kenneth Rosenthal*, with whom, on the brief, was *Allison M. Near*, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *David J. Smith*, supervisory assistant state's attorney, for the appellee (state).

*Christine Perra Rapillo*, chief public defender, and *Ann M. Parrent*, assistant public defender, filed a brief for the Office of the Chief Public Defender as amicus curiae.

*Opinion*

PER CURIAM. The defendant, Darnell Moore, appeals, upon our grant of his petition for certification,[1] from the judgment of the Appellate Court affirming his conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a. *State* v. *Moore*, 169 Conn. App. 470, 473, 151 A.3d 412 (2016). On appeal, the defendant challenges the Appellate Court's conclusion that the trial court properly denied his motion to strike the voir dire panel on the ground that he failed to provide any statistical analysis or data to prove that the lack of African-American males on that panel rendered it not a fair cross section of the New London judicial district from which it was drawn, in violation of the sixth amendment to the United States constitution. See *Duren* v. *Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979); *State* v. *Gibbs*, 254 Conn. 578, 588, 758 A.2d 327 (2000). The defendant contends specifically that the Appellate Court incorrectly determined that the census data he proffered about the percentage of *all* African-Americans in the population of both Connecticut as a whole and the New London judicial district specifically did not constitute probative evidence with respect to the inquiry at issue, which was limited to the percentage of African-American *males* eligible for jury service, because, "[w]ithout an ability to rely on census data, [he] had no recourse as to how he might demonstrate a fair cross section claim." The defendant also argues that the Appellate Court improperly declined to exercise its supervisory power over the administration of justice to further the purpose of General Statutes § 51-232 (c)[2] by requiring the jury administrator to collect and maintain racial and demographic data for all jurors because, "without that information, there is no mechanism by which . . . any defendant can effectively present evidence of the number of distinctive group members in the jury pool for the pertinent judicial district."

After examining the entire record on appeal and considering the briefs and oral arguments of the parties, we have determined that the appeal in this case should be dismissed on the ground that certification was improvidently granted.

Beyond dismissing the appeal, however, we offer an additional observation with respect to the defendant's request, supported by the amicus curiae Office of the Chief Public Defender, to exercise our supervisory authority over the administration of justice to enhance the diversity of our state's juries by requiring the jury administrator to collect racial and demographic information about prospective jurors, including by (1) amending the juror questionnaire to mandate the inclusion of racial and ethnic background, rather than the current practice under § 51-232 (c) of making the provision of such information voluntary, which might skew

the data collected, and (2) maintaining statistical information based on that data prior to the destruction of the questionnaires in accordance with Judicial Branch policy intended to protect juror confidentiality. See, e.g., *Barlow* v. *Commissioner of Correction*, 328 Conn. 610, 612–15, 182 A.3d 78 (2018) (providing additional explanation in dismissing appeal as improvidently granted). As we noted in *State* v. *Raynor*, 334 Conn.    ,    ,    A.3d    (2019), a companion case raising similar issues in the context of claims under *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the fact that the legislature has acted in this area by enacting § 51-232 (c)—which specifically makes the provision of racial and ethnic data optional for the juror—renders us reluctant to exercise our supervisory authority in the sweeping manner sought by the defendant and the amicus curiae Office of the Chief Public Defender. Instead, we anticipate these issues will be considered by the Jury Selection Task Force, which the Chief Justice will appoint pursuant to our decision in *State* v. *Holmes*, 334 Conn.    ,    ,    A.3d    (2019), to suggest those changes to court policies, rules, and legislation necessary to ensure that our state court juries are representative of Connecticut's diverse population.

The appeal is dismissed.

[1] We granted the defendant's petition for certification to appeal, limited to the following issues: "In concluding that the defendant could not prevail on his motion to strike the voir dire panel on the ground that it failed to constitute a fair cross section of the community:

"1. Did the Appellate Court properly conclude that census data pertaining to the entire African-American population in Connecticut and New London county [did] not [constitute] probative evidence with respect to the claimed underrepresentation of African-American males in the jury pool?

"2. Did the Appellate Court properly decline, in light of the provisions of General Statutes § 51-232 (c), to exercise its supervisory authority over the administration of justice to enforce the collection of demographic data to permit analysis of the diversity of jury panels in Connecticut?" *State* v. *Moore*, 324 Conn. 915, 915–16, 153 A.3d 1289 (2017).

[2] General Statutes § 51-232 (c) provides: "The Jury Administrator shall send to a prospective juror a juror confirmation form and a confidential juror questionnaire. Such questionnaire shall include questions eliciting the juror's name, age, race and ethnicity, occupation, education and information usually raised in voir dire examination. The questionnaire shall inform the prospective juror that information concerning race and ethnicity is required solely to enforce nondiscrimination in jury selection, that the furnishing of such information is not a prerequisite to being qualified for jury service and that such information need not be furnished if the prospective juror finds it objectionable to do so. Such juror confirmation form and confidential juror questionnaire shall be signed by the prospective juror under penalty of false statement. Copies of the completed questionnaires shall be provided to the judge and counsel for use during voir dire or in preparation therefor. Counsel shall be required to return such copies to the clerk of the court upon completion of the voir dire. Except for disclosure made during voir dire or unless the court orders otherwise, information inserted by jurors shall be held in confidence by the court, the parties, counsel and their authorized agents. Such completed questionnaires shall not constitute a public record."